IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

NATIONAL FEDERATION OF            §
INDEPENDENT BUSINESS,             §
                                  §
                    Plaintiff,    §
                                  §
v.                                §   Civil Action No. 3:16-CV-2568-D
                                  §
DOROTHY DOUGHERTY, in her         §
official capacity as Deputy Assistant §
Secretary of Labor for the Occupational §
Safety and Health Administration, et al., §
                                  §
                    Defendants.   §

MEMORANDUM OPINION
AND ORDER

    In this administrative law dispute between an association of small businesses and the

Occupational Safety and Health Administration ("OSHA") and two OSHA officials, the

OSHA defendants move to dismiss for lack of subject matter jurisdiction and failure to state

a claim. For the reasons that follow, the court grants the motion in part and denies it in part.

I

    Plaintiff National Federation of Independent Business ("NFIB") brings this action for

declaratory and injunctive relief against OSHA; Dorothy Dougherty, in her official capacity

as Deputy Assistant Secretary of Labor for OSHA; and Eric Harbin, in his official capacity

as Regional Administrator for Region 6 of OSHA (collectively, "OSHA").[1] NFIB alleges

---

[1]In deciding OSHA's Rule 12(b)(6) motion, the court construes NFIB's original complaint for declaratory and injunctive relief in the light most favorable to NFIB, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in NFIB's

that an OSHA Standard Interpretation Letter (the "Letter") that contains policies for safety walkarounds violates the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA"), and exceeds OSHA's authority under the Occupational Safety and Health Act of 1970, 29 U.S.C. § 651 *et seq.* ("Act").   The Letter permits employees to designate third parties as their representatives in OSHA safety walkarounds, which NFIB contends essentially authorizes union recruiters to enter workplaces against the employers' wishes.

The Act gives OSHA the right to inspect workplaces.  29 U.S.C. § 657.  The Act also gives an employee the right to have a representative present at a workplace inspection.  29 U.S.C. § 657(e).  Shortly after passage of the Act, OSHA promulgated through notice and comment a rule interpreting the employee representative provision in the Act.  29 C.F.R. § 1903.8(c); *see* 36 Fed. Reg. 17,851 (Sept. 4, 1971).   The rule—29 C.F.R. § 1903.8(c)—provides:

---

favor. *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

A Rule 12(b)(1) motion can mount either a facial or factual challenge.  *See, e.g., Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)). When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial.  *Id.*  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true. If the allegations are sufficient to allege jurisdiction, the court must deny the motion."  *Id.*  (citation omitted) (citing *Paterson*, 644 F.2d at 523).

> The representative(s) authorized by employees shall be an employee(s) of the employer.  However, if in the judgment of the Compliance Safety and Health Officer, good cause has been shown why accompaniment by a third party who is not an employee of the employer (such as an industrial hygienist or a safety engineer) is reasonably necessary to the conduct of an effective and thorough physical inspection of the workplace, such third party may accompany the Compliance Safety and Health Officer during the inspection.

Section 1903.8(c) therefore requires that the employee representative be an employee of the employer.  *Id.*  But it also permits a third party who is not an employee of the employer, "such as an industrial hygienist or a safety engineer," to participate in the inspection if, in the judgment of the Compliance Safety and Health Officer, it is reasonably necessary to the conduct of an effective and thorough physical inspection of the workplace.  *Id.*

In February 2013 OSHA issued the Letter in response to an inquiry from a union official regarding whether a worker at a workplace without a collective bargaining agreement could authorize a person affiliated with a union or community organization to act as his representative.  The Letter states:

> The OSHA regulation implementing section 8, 29 C.F.R. § 1903.8, likewise recognizes the value of participation by employee representatives in OSHA inspections.  Although the regulation acknowledges that most employee representatives will be employees of the employer being inspected, it also makes clear that there may be times when the presence of an employee representative who is not employed by that employer will allow a more effective inspection.  Thus, section 1903.8(c) explicitly allows walkaround participation by an employee representative who is not an employee of the employer when, in the judgment of the OSHA compliance officer, such a representative is "reasonably necessary to the conduct of an effective and thorough physical inspection."  It is OSHA's view

> that representatives are "reasonably necessary" when they will make a positive contribution to a thorough and effective inspection.

Letter at 2.  The Letter therefore concluded that the worker could authorize a person affiliated with a union or community organization to act as his representative.  It based this conclusion on an interpretation of the "reasonably necessary" standard for permitting third parties at walkarounds.  According to the Letter, a nonemployee representative is a reasonably necessary third party when he "will make a positive contribution" to an effective inspection. *Id.*  NFIB alleges that the Letter's interpretation contradicts both § 1903.8(c) and the Act.

An NFIB member, Professional Janitorial Services ("PJS"), has been directly affected by the policy announced in the Letter.  PJS is a cleaning service company based in Houston.  It is an open-shop company, meaning that employees are not required to join or financially support a labor union as a condition of employment.  Despite PJS's contrary wishes, it was required to permit non-employee union representatives to be present for walkarounds.

According to NFIB's complaint, OSHA Compliance Safety and Health Officers entered PJS workplaces four times between October 2013 and February 2014, accompanied by non-employee representatives of the Service Employees International Union, a large labor union that represents janitors and other tradesmen.  These union representatives did not appear to have any special expertise, such as that of an industrial hygienist or safety engineer, to which §1903.8(c) refers.  When these inspections began, PJS objected to the presence of the union members, but was required to permit them in the workplace based on the Letter.  PJS alleges that it will again be required to allow nonemployee union representatives in its

workplaces due to OSHA's enforcement of the Letter.   NFIB asserts that OSHA's enforcement of the Letter gives union leaders an opportunity to proselytize employees during safety walkarounds.

NFIB brings this lawsuit against the OSHA defendants based on two claims: first, that the Letter is in effect a legislative rule that was promulgated without an opportunity for notice and comment, and is therefore unlawful; and, second, that the Letter is contrary to the Act, and therefore exceeds OSHA's statutory authority.

OSHA moves to dismiss these claims under Rule 12(b)(1) for lack of subject matter jurisdiction, contending that (1) NFIB does not have standing; (2) the case is not ripe for review; (3) the Letter is not final agency action; (4) the Act precludes pre-enforcement review of the Letter; and (5) NFIB has an adequate legal remedy other than through declarative relief.   OSHA also moves to dismiss NFIB's claims under Rule 12(b)(6) for failure to state a claim on which relief can be granted, maintaining that (1) the Letter is an interpretive rule exempt from notice and comment under the APA; and (2) the Letter is consistent with the Act and its implementing regulations.   NFIB opposes the motion.

## II

Before turning to the grounds of OSHA's motion to dismiss, the court will briefly set out the pertinent standards that govern whether dismissal should be granted under Rule 12(b)(1) or 12(b)(6).

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d

144, 151 (5th Cir. 1998).  A Rule 12(b)(1) motion can mount either a facial or factual challenge.  *See, e.g., Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)).  When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial.  *Id.*  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true.  If the allegations are sufficient to allege jurisdiction, the court must deny the motion."  *Id.* (citation omitted) (citing *Paterson*, 644 F.2d at 523).  "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction.  Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citations omitted).

In deciding a Rule 12(b)(6) motion, the court evaluates the sufficiency of NFIB's complaint "by accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."  *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)) (internal quotation marks and brackets omitted).  To survive a motion to dismiss under Rule 12(b)(6), NFIB must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (brackets omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Furthermore, under Rule 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Although "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" it demands more than "'labels and conclusions.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* (quoting *Twombly*, 550 U.S. at 555).

## III

OSHA maintains that NFIB lacks Article III standing.

## A

To establish Article III standing, NFIB must show that it has "suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Because OSHA's

motion to dismiss is not supported by evidence, the court must decide the jurisdictional

question based on the complaint alone, and it must presume that the allegations of the

complaint are true.  *See, e.g., Sullo & Bobbitt, PLLC v. Abbott*, 2012 WL 2796794, at *4

(N.D. Tex. July 10, 2012) (Fitzwater, C.J.), *aff'd*, 536 Fed. Appx. 473 (5th Cir. 2013).  The

court cannot dismiss the complaint if the allegations are sufficient.  *See Hunter*, 2013 WL

607151, at *2 (citing *Paterson*, 644 F.2d at 523).

B

1

OSHA first contends that NFIB has not suffered an injury in fact.[2]  It maintains that

NFIB and its members have not suffered a past injury, and that NFIB's allegations of future

injury are too speculative to establish standing.  While acknowledging that NFIB member

---

[2]OSHA appears to contest only one element of NFIB's associational standing: whether any individual member of NFIB would have standing to sue in its own right.

> An association has standing to bring a suit on behalf of its members when: (1) its members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members.

*Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 792 (5th Cir. 2000) (citing *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 129 F.3d 826, 827-28 (5th Cir. 1997)).  "The first two components of *Hunt* address constitutional requirements, while the third prong is solely prudential." *Ass'n of Am. Physicians & Surgeons, Inc. v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010) (citing *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 555 (1996)).

-8-

PJS has already been subjected to the presence of third-party representatives at its workplaces, OSHA contends that NFIB has not substantiated why this is an injury.

OSHA also contends that the threat of future injury is baseless and speculative because OSHA cannot issue citations or penalties solely on the basis of a refusal to permit inspection (although it can seek a warrant to compel access for inspectors).  OSHA therefore maintains that any future injury to NFIB or its members depends on a long chain of attenuated events.  According to OSHA, such a scenario would either require a court to issue a warrant, and then refuse to quash it after hearing the employer's objection, or require an OSHA compliance officer to disregard procedure and continue an inspection over the employer's objection, without obtaining a warrant.  Then OSHA would have to cite the employer for an unrelated safety violation.  OSHA contends that such a speculative chain of events cannot show injury in fact.  *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983) (holding that risk of plaintiff's being stopped and illegally choked by police again in future was too unlikely to establish standing).

In response, NFIB offers a number of theories of injury in fact.  First, NFIB contends that its injury does not depend on the likelihood of incurring civil penalties, but on the actions it must take to avoid civil penalties.  In this case, such actions include "allowing persons onto their property whom they would otherwise exclude." P. Br. 5.  NFIB posits that such an infringement of its property rights constitutes an injury in fact.  *See Virginia v. Hicks*, 539 U.S. 113, 121 (2003) (holding that inability to prosecute for trespass was injury in fact); *Bailey v. Spangler*, 2015 WL 3545964, at *3 (E.D. Va. June 4, 2015) (holding that imminent

threat of trespass and loss of right to exclude others from property established injury in fact).

Second, NFIB argues that OSHA's chain of hypothetical events leaves out important alternative scenarios. For example, NFIB maintains that, under OSHA regulations, a compliance officer may arrive at a workplace having already obtained a pre-inspection warrant. *See* 29 C.F.R. § 1903.4(b). In this scenario, the employer could not avail itself of a motion to quash, and would be left to choose between consenting to the inspection or risking a contempt citation. NFIB posits that the law does not require an employer to occupy this position. *See Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 490 (2010) ("We normally do not require plaintiffs to bet the farm by taking the violative action before testing the validity of the law[.]" (internal quotation marks and ellipses omitted)). NFIB also posits that OSHA's emphasis on the remoteness of civil penalties is misplaced, because the general rule is that a party can challenge a regulation without first having to violate it. *See id.*

Third, NFIB contends that its members are directly regulated parties who presumptively have standing to challenge the Letter. *See U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 739 (D.C. Cir. 2016) (holding that person or company who is direct object of regulatory action ordinarily has standing to sue). NFIB maintains that a reasonable fear of future enforcement is sufficient to establish injury in fact, and that its member, PJS, has a reasonable fear of future inspections occurring without notice. *See* 29 C.F.R. § 1903.6(a)-(b) (limiting advance notice of inspections).

2

The court concludes that NFIB has sufficiently alleged an injury in fact. NFIB alleges past injury in the form of the presence of non-employee third parties on the property of one of its members. *See Hicks*, 539 U.S. at 121.

And NFIB has alleged sufficiently certain future injury through the use of pre-inspection warrants. Although OSHA maintains that the agency is unlikely to seek a pre-inspection warrant, its regulations grant inspectors authority to arrive with a warrant in hand in cases where "the employer's past practice either implicitly or explicitly puts the Secretary on notice that a warrantless inspection will not be allowed." 29 C.F.R. § 1903.4(b)(1). PJS has in the past objected to the presence of non-employee representatives on walkarounds. Consequently, the Letter subjects NFIB members to the imminent threat that a compliance officer will arrive at one of their workplaces with an *ex parte* warrant to conduct a walkaround inspection, accompanied by a non-employee representative. Under the Letter, NFIB members must choose between permitting an unauthorized person on their premises or being held in contempt if they refuse access. This establishes injury in fact. *See Free Enter. Fund*, 561 U.S. at 490 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007)).

And finally, OSHA has not responded to NFIB's argument that its members are directly regulated parties with presumptive standing to challenge the Letter, and that this status alone is sufficient to establish injury in fact. *See U.S. Telecom Ass'n*, 825 F.3d at 739.

C

OSHA also contends that NFIB lacks standing based on lack of causation and redressability.

1

OSHA maintains that the Letter did not cause the alleged injury, and that a favorable decision in this case would not redress such an injury, because the Letter is a consistent interpretation of preexisting regulation and the Act.  Put differently, OSHA contends that its authority to bring nonemployee representatives into workplaces "stems not from the 2013 Letter, but from OSHA's 45-year-old inspection regulation and from the OSH Act."  Ds. Br. 9.

NFIB responds that OSHA's position on causation and redressability is only a restatement of its merits contention that the Letter is a proper interpretive rule.  NFIB therefore maintains that the issues  OSHA raises are appropriately considered on the merits of this case, not as questions that bear on whether NFIB has standing.  *Cf. Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.*, 207 F.3d 789, 793 (5th Cir. 2000) (holding that plaintiff need not prove that defendant violated law to establish causation for standing purposes).

2

NFIB has alleged sufficient facts to establish that its injuries are fairly traceable to the Letter and are likely to be redressed by a favorable decision.  Although OSHA contends that prior regulation supported the Letter's interpretation, NFIB alleges facts contradicting that

position.  For example, NFIB alleges that "[p]rior to 2013, it was commonly accepted OSHA practice among employers that, consistent with Section 1903.8, union representatives could not accompany a compliance officer unless they were employees themselves, or they had some specialized technical or site-specific knowledge."  Compl. 6.  NFIB asserts that, since OSHA promulgated the Letter addressing this subject in 2013, PJS has received four such visits that included nonemployee union representatives.  NFIB has sufficiently pleaded that the Letter caused the alleged injuries.  *See Bennett*, 520 U.S. at 162.  And NFIB has sufficiently alleged redressability because it pleads that the policy announced in the Letter is contrary to law.  Therefore, a favorable decision in this case will likely redress NFIB's injuries flowing from that policy.  *See id.*

## D

Because NFIB has sufficiently alleged that it has suffered injury in fact, that the injury is fairly traceable to the Letter, and that the injury will be likely be redressed by a favorable decision, the court concludes that NFIB has Article III standing.  *See id.*

## IV

OSHA next contends that the court lacks jurisdiction to exercise judicial review under the APA because the Letter is not a final agency action.

## A

For an agency action to be final, two conditions must be satisfied: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature.  And second, the action must be one by which rights

or obligations have been determined, or from which legal consequences will flow." *Bennett*,

520 U.S. at 177-78 (internal quotation marks and citation omitted). "In evaluating whether

a challenged agency action meets these two conditions, this court is guided by the Supreme

Court's interpretation of the APA's finality requirement as 'flexible' and 'pragmatic.'"

*Qureshi v. Holder*, 663 F.3d 778, 781 (5th Cir. 2011) (quoting *Abbott Labs. v. Gardner*, 387

U.S. 136, 149-50 (1967), *overruled on other grounds by Califano v. Sanders*, 430 U.S. 99,

105 (1977)).

B

OSHA contends that the Letter is not the consummation of agency decisionmaking

because it can be administered flexibly according to the factual situation, or withdrawn at any

time, *see Luminant Generation Co. v. EPA*, 757 F.3d 439, 442 (5th Cir. 2014) (holding that

EPA notice of violation was not final agency action because, *inter alia*, notice could lead to

variety of different legal actions); that no legal rights or liabilities flow from the Letter

because, "[e]ven if a compliance officer determines that a third-party representative would

positively contribute to an inspection, an employer can refuse OSHA and the third party

access to its worksite without facing any consequences beyond those already provided for

in the OSH Act and OSHA's regulations," Ds. Br. 14; that the Letter is not final agency

action because it is merely an interpretive—not a legislative—rule, *see American Tort

Reform Ass'n v. OSHA*, 738 F.3d 387, 395 (D.C. Cir. 2013) (holding that interpretive rule

was not final agency action because it was merely guideline and not offered in support of

agency position in pending actions); and that the Letter does not create an exception to §

-14-

1903.8(c) because the policy announced in the Letter fits within the third-party exception that has always been present in the regulation.

NFIB responds that the Letter is a final agency action because it changes the scope of the agency's walkaround right: Under previous interpretations of § 1903.8(c), OSHA could not demand access to workplaces for nonemployee representatives, but under the Letter, OSHA can and has done so.  *See Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 755-56 (5th Cir. 2011) (holding that guidance letters can be final agency actions if they meet the two-part *Bennett* standard).  NFIB contends that, in this way, the Letter is both the consummation of the agency's decisionmaking process and a determination of regulated parties' rights and liabilities.  *See U.S. Army Corps of Eng'rs v. Hawkes Co.*, ___ U.S. ___, 136 S. Ct. 1807, 1814 (2016) (holding that possibility of agency's revising its determination did not negate finality).  NFIB maintains that the Letter sets forth OSHA's considered view of who may accompany compliance officers on walkarounds, and subjects regulated parties to liability for failing to comply with this view.

C

NFIB has sufficiently alleged final agency action.  The Letter marks the consummation of OSHA's decision process, and is not tentative or interlocutory, as evidenced by its repeated implementation against NFIB member PJS.  Although OSHA contends that the Letter may not be similarly followed in other factual situations, the Letter has already been used to expand the agency's rights at the expense of regulated parties' ability to exclude unwanted nonemployees.  *See Hawkes*, 136 S. Ct. at 1814.  And the Letter

determines legal rights and obligations by subjecting regulated parties to liability for noncompliance.

OSHA's argument that the Letter does not threaten any consequences beyond those already provided for lacks force.  The Letter expands the circumstances in which those consequences could be imposed.  Although the court is not convinced at this juncture that some of the civil penalties that NFIB cites could be imposed for noncompliance with the Letter, NFIB has adequately pleaded that some liability is threatened.  For example, refusal to admit an OSHA compliance officer who obtains a pre-inspection warrant and is accompanied by a nonemployee could be punished by contempt.

V

OSHA next maintains that the case is not ripe for decision.

A

The ripeness doctrine exists "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732-33 (1998) (quoting *Abbott*, 387 U.S. at 148-49; *see also Am. Trucking Ass'ns v. ICC*, 747 F.2d 787, 789-90 (D.C. Cir. 1984) (stating that avoiding entanglement in abstract disagreements serves function not merely of protecting agency, but of protecting court from adjudicating matters that are not sufficiently fleshed out, make no difference, and waste judicial resources).

The ripeness determination generally requires that the court evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott*, 387 U.S. at 149.  This involves considering whether (1) the issues presented are purely legal; (2) the agency's pronouncement is a "final agency action" within the meaning of 5 U.S.C. §§ 551(13) and 704; (3) the impact on the petitioners is direct and immediate; and (4) resolution of the issues will foster effective administration of the statute. *Merchs. Fast Motor Lines, Inc. v. ICC*, 5 F.3d 911, 920 (5th Cir. 1993) (citing *Abbott*, 387 U.S. at 149-154).

B

Regarding the first factor, OSHA argues that the issues are not purely legal because fact-specific inquiries may remain.  *See Monk v. Huston*, 340 F.3d 279, 282 (5th Cir. 2003) (holding that procedural due process claim was not ripe because permit application had not yet been approved or denied).  OSHA contends that factual questions might include whether a nonemployee representative in a particular instance meets either or both of the "reasonably necessary" (§ 1903.8(c)) or "will make a positive contribution" (Letter) standards for third-party participation, based on the particular worksite and the person's expertise.

NFIB maintains that the issues to be decided are purely legal.  According to NFIB, the notice-and-comment violation that it asserts is a purely legal claim, because whether the Letter effectively repealed an existing legislative rule—and thus could only properly have been adopted with notice and comment—only requires an application of the law to the relevant legal texts.  *See Cement Kiln Recycling Coal. v. EPA*, 493 F.3d 207, 215 (D.C. Cir.

2007) ("It is well established that claims that an agency's action is arbitrary and capricious or contrary to law present purely legal issues. So, too, do claims that an agency violated the APA by failing to provide notice and opportunity for comment." (citations, internal quotation marks, and brackets omitted)). NFIB likewise argues that its second claim—that the Letter is contrary to the Act—is purely legal because it is a question of statutory interpretation. *See Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA*, 752 F.3d 999, 1008 (D.C. Cir. 2014) (holding that challenge to EPA's non-uniform interpretation of pollution "source" presented purely legal question of whether the regime violated statute or regulation).

The court concludes that the issues to be decided are purely legal. The issues raised by NFIB—whether the Letter effectively repeals a legislative rule, and whether the policy set out in the Letter is contrary to the Act—are legal questions that will not be affected by the factual circumstances of an enforcement. *See Cement Kiln*, 493 F.3d at 215.

## C

With respect to the second factor, the Letter is final agency action. *See supra* § IV.

## D

Regarding the third factor, OSHA contends that the Letter has no direct or immediate impact on NFIB; that NFIB has not been required to change its behavior on account of the Letter, *see Taylor-Callahan-Coleman Cntys. Dist. Adult Probation Dept. v. Dole*, 948 F.2d 953, 959 (5th Cir. 1991) (holding that Department of Labor opinion that probation officers were not exempt from FLSA did not have direct or immediate impact on employer); and that the only potential hardship would come after an opportunity to object to the nonemployee

representatives' presence and a motion to quash a warrant.

NFIB responds that the Letter has a direct and immediate effect on its members because failure to comply risks civil liability. *See Louisiana v. U.S. Army Corps of Eng'rs*, 834 F.3d 574, 583 (5th Cir. 2016) ("Judicially reviewable agency actions normally affect a regulated party's possible legal liability; these consequences tend to expose parties to civil or criminal liability for non-compliance with the agency's view of the law or offer a shelter from liability if the regulated party complies.").

The court concludes that the Letter has direct and immediate impact on NFIB and its members.  It is plausible to assume that an OSHA compliance officer could obtain a pre-inspection warrant to conduct a workplace inspection, show up at the workplace accompanied by a nonemployee representative or third party to whom the employer objects, and demand access to the workplace on pain of contempt.  Therefore, the Letter has a direct and immediate impact on NFIB and its members.  *See id.*

E

Regarding the fourth factor, OSHA contends that resolution of the issues raised by NFIB would not foster effective administration because it would "interrupt[] OSHA's inspection and enforcement procedures," which include the employer's opportunity to move to quash a warrant or to later object to evidence in any citation proceeding.  Ds. Br. 12 (citing *In re Establishment Inspection of Manganas Painting Co.*, 104 F.3d 801, 803 (6th Cir. 1997) (holding that district court had no subject matter jurisdiction over challenge to OSHA enforcement action)).

NFIB responds that the instant suit does not impede effective enforcement or administration because, unlike in the case cited by OSHA, this suit does not interfere with an enforcement proceeding.  NFIB maintains that review was unavailable in *Manganas Painting* because the plaintiff had not yet exhausted its administrative remedies under the Act, *see id.* at 803, whereas here, no administrative proceeding has been or is likely to be commenced.

The court concludes that exercising jurisdiction over NFIB's claims would not interfere with effective administration of the statute, and it may assist it.  OSHA admits that no citations will be issued (and thus no administrative proceedings commenced) over the issues raised by NFIB; instead OSHA agrees that the question whether a non-employee representative is permitted on a walkaround inspection is likely to be litigated in a collateral proceeding in the district court, such as in a contempt proceeding or in connection with a motion to quash a warrant.  *See* Ds. Br. 7-8, 19 n.8.  Because no agency enforcement proceeding is anticipated, the instant case cannot interfere with "administration" of the Act in the way contemplated by the ripeness inquiry.  *Cf. Manganas Painting*, 104 F.3d at 803 (holding that district court lacked jurisdiction over action for injunctive relief against OSHA because petitioner failed to exhaust administrative remedies).

F

For the reasons explained, the court concludes that NFIB's claims are ripe for adjudication.  *See Merchs. Fast Motor Lines*, 5 F.3d at 920.

VI

OSHA next contends that the court lacks jurisdiction because pre-enforcement judicial review is precluded by the Act's scheme of administrative review.  OSHA relies on *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), in which the Supreme Court held that the district court lacked jurisdiction over an employer's challenge to a directive of the Mine Safety and Health Administration.  The petitioner in *Thunder Basin* objected to an agency directive to post information about employee-selected representatives who were union officials and not employees of the mine.  *Id.* at 204.  The Supreme Court held that review in the district court was foreclosed by the Mine Act, because Congress intended to streamline the enforcement process and because the nature of the claim was within agency competence.  *Id.* at 214-16.

OSHA argues that the holding in *Thunder Basin* controls this case, particularly when viewed through the lens of *Sturm, Ruger & Co. v. Chao*, 300 F.3d 867 (D.C. Cir. 2002), which held that the district court lacked jurisdiction over a challenge to OSHA enforcement. *Sturm, Ruger* extended *Thunder Basin*'s reasoning to the OSH Act because "the administrative and judicial review procedures in the OSH Act are nearly identical to those in the Mine Act."  *Id.* at 872 (internal quotation marks and brackets omitted).  To reach its conclusion of no jurisdiction, the court also determined that the petitioner's claims were of the type Congress intended to receive administrative review under the statute.  *Id.* at 873-74. OSHA contends that the instant claims, like those in *Sturm, Ruger*, must be pursued in the administrative process.

NFIB responds that judicial review in this case is not precluded by the Act's administrative scheme.  NFIB emphasizes a salient difference between the instant case and those relied on by OSHA: each case cited by OSHA was a challenge to an ongoing or impending enforcement proceeding.  *See Thunder Basin*, 510 U.S. at 216 (assuming that citation would have issued but for petitioner's lawsuit); *Sturm, Ruger*, 300 F.3d at 876 (OSHA citations pending); *Manganas Painting*, 104 F.3d at 802 (OSHA citations pending).  Here, by contrast, NFIB maintains that no enforcement proceeding has occurred or is likely.  NFIB therefore argues that the Letter harms employers without any prospect of agency-initiated administrative action.

OSHA seems to agree that it cannot cite NFIB members for denying access to workplaces.  *See* Ds. Br. 7 ("[T]here is nothing in the OSH Act that grants OSHA the authority to issue citations or penalties to an employer if an employer refuses to grant OSHA access to its worksite for the purpose of an inspection.").  NFIB argues that this shows that its claims are not the type that should be, or can be, resolved through the administrative process.

The court concludes that judicial review of NFIB's claims is not precluded by the Act.  Although the Act is intended to resolve most cases through administrative adjudication followed by review in the courts of appeals, *see Sturm, Ruger*, 300 F.3d at 873-74, no administrative enforcement of the Letter has begun or is likely.  Thus it appears that NFIB's claims are not of the type intended to be resolved through the statute's administrative scheme, and also that "a finding of preclusion could foreclose all meaningful judicial

review." *Thunder Basin*, 510 U.S. at 212-13.

And the court disagrees with OSHA's contention that meaningful review would be available either through a motion to quash a warrant or a contempt proceeding in the district court.  As previously held, an employer might be confronted with a pre-inspection warrant, and accompanying threat of contempt, without any prior opportunity to litigate a motion to quash.  Meaningful review must normally be available on the initiative of the regulated party, and not require the party to break the law for the purpose of testing it.  *See Free Enter. Fund*, 561 U.S. at 490 (holding that need to deliberately incur administrative sanction to test law was not meaningful judicial review); *see also Sackett v. EPA*, 566 U.S. 120, 127 (2012).  Therefore, the court holds that the Act does not preclude judicial review of NFIB's claims.

VII

OSHA contends that NFIB cannot bring suit under the APA because it has another adequate legal remedy in court.  *See* 5 U.S.C. § 704 ("[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review.").  But, as already set out, the other judicial fora identified by OSHA are not adequate because NFIB can only reach them by deliberately violating the law to test its validity.  *See Free Enter. Fund*, 561 U.S. at 490; *see also Sackett*, 566 U.S. at 127.  Accordingly, the court holds that NFIB may maintain a suit under the APA.

VIII

The court now turns to OSHA's contention that NFIB has failed to state a claim on which relief can be granted.  NFIB alleges in its first claim that the Letter is in effect a

legislative rule adopted without notice and comment.

A

OSHA maintains that this claim should be dismissed because the Letter is an interpretive rule exempt from the notice and comment requirement, *see* 5 U.S.C. § 553(b)(3)(A); *Perez v. Mortg. Bankers Ass'n*, ___ U.S. ___, 135 S. Ct. 1199, 1204 (2015); that the Letter only interprets what § 1903.8(c) already requires, and that § 1903.8(c) has always permitted nonemployees to serve as employee representatives; that although the rule explicitly states that "[t]he representative(s) authorized by employees shall be an employee(s) of the employer," the rule also authorizes participation by a "third party" when "reasonably necessary to the conduct of an effective and thorough physical inspection of the workplace," 29 C.F.R. § 1903.8(c); that the Letter merely interprets § 1903.8(c) to mean that the third party category may encompass nonemployee representatives, *see Am. Mining Cong. v. MSHA*, 995 F.2d 1106, 1112 (D.C. Cir. 1993) (holding that interpretive rule may provide "crisper and more detailed lines" than the rule being interpreted without itself becoming a legislative rule); and that the Letter authorizes compliance officers to determine whether a nonemployee representative is reasonably necessary based on whether he will "make a positive contribution" to the inspection, Letter at 2.

NFIB responds that, although the Letter is styled as an interpretive rule, it is in effect a legislative rule. *See Am. Mining Cong.*, 995 F.2d at 1112 (a rule is legislative if it amends a prior legislative rule). And it contends that the Letter plainly contradicts § 1903.8(c)'s requirement that the employee representative be an employee himself. *Compare* 29 C.F.R.

§ 1903.8(c) ("The representative(s) authorized by employees shall be an employee(s) of the employer.") *with* Letter at 2 ("[S]ection 1903.8(c) explicitly allows walkaround participation by an employee representative who is not an employee of the employer[.]").

In reply, OSHA maintains that the agency's "longstanding interpretation" of § 1903.8(c) permits any person to act as an employee representative if so authorized, including family members or clergy.  Ds. Reply. 7 (citing Occupational Safety & Health Admin., Field Operations Manual at 9-2).

## B

The court concludes that NFIB has stated a claim upon which relief can be granted. The Letter flatly contradicts a prior legislative rule as to whether the employee representative must himself be an employee.  *See Am. Mining Cong.*, 995 F.2d at 1112.  Even if OSHA can show that union representatives *should* be permitted on walkarounds, § 1903.8(c) is clear that such a person cannot be designated as an employee's representative unless the person is employed by the employer.

As for OSHA's prior practice, an internal operations manual does not ordinarily have the force of law.  *See Reich v. Manganas*, 70 F.3d 434, 437 (6th Cir. 1995).  And because no other authority is cited to support this interpretation, this practice itself would be invalid to the extent it contradicts § 1903.8(c).

## IX

NFIB's second claim alleges that the Letter is contrary to the Act and therefore exceeds OSHA's authority.  OSHA contends that this claim should be dismissed because the

Letter is consistent with the Act.

A

The Act provides, in pertinent part:

> Subject to regulations issued by the Secretary, a representative of the employer and a representative authorized by his employees shall be given an opportunity to accompany the Secretary or his authorized representative during the physical inspection of any workplace under subsection (a) of this section for the purpose of aiding such inspection.

29 U.S.C. § 657(e). "An executive branch agency's interpretations of the statutes that it is authorized to administer may be entitled to the deference identified under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842 (1984)." *Dhuka v. Holder*, 716 F.3d 149, 154 (5th Cir. 2013). But "[i]nterpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference." *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000). "Instead, interpretations contained in formats such as opinion letters are entitled to respect under . . . *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the power to persuade." *Id.* (internal quotation marks and citation omitted).

The types of agency action generally entitled to *Chevron* deference include notice-and-comment rulemaking and formal adjudication. *United States v. Mead Corp.*, 533 U.S. 218, 230 (2001). Publication in the Federal Register may also indicate that an interpretation is of the type entitled to *Chevron* deference. *See Doe v. Leavitt*, 552 F.3d 75, 80 (1st Cir.

2009).  The absence of these factors indicates that agency action does not have force of law and is entitled only to respect under *Skidmore* to the extent the interpretation is persuasive. *See Christensen*, 529 U.S. at 587.

B

OSHA contends that the Letter is a valid interpretation of the Act; that the Letter is consistent with the statutory purpose—to enable the agency to conduct effective workplace inspections, *see* 29 U.S.C. § 657(e) (employee walkaround right is "for the purpose of aiding such inspection"); that the Letter enables a compliance officer to determine whether a particular nonemployee representative or third party will aid the inspection, and to authorize participation accordingly; that, for example, the Letter's interpretation would give effect to Congressional intent in a hypothetical case where all employees at a workplace speak little or no English, and thus nominate a bilingual third party as their representative; and that the resulting improved communication would aid the inspection as intended by the statute.

NFIB responds that the Letter is an invalid interpretation because it upsets the legislative compromise struck by the Act.  NFIB cites statements from the Act's legislative history as evidence that Congress intended to place limits on the scope of the walkaround right for employees.  *See, e.g.*, S. Rep. No. 91-1282, at 58-59 (1970) (statement of Senator Javits)[3]; 116 Cong. Rec. 36530 (Oct. 13, 1970) (amendment explanation offered by Senator

_____

[3]             "[P]rovisions  .  .  .  permitting authorized representatives of employees to accompany inspectors have been clarified and protected from abuse by provisions making such right clearly

Dominick).[4]  NFIB argues that the Letter upsets the intended balance between maintaining

valuable employee participation and mitigating the extent of unrelated union activities during

safety walkarounds.

C

Although OSHA's position in the Letter is only entitled to *Skidmore* deference, the

Letter is a persuasive and valid construction of the Act.  Congress granted the employee

walkaround right for the explicit purpose of aiding workplace inspections.  *See* 29 U.S.C.

§ 657(e).  And OSHA's choice to more broadly construe the types of persons who may serve

as employee representatives is not inconsistent with this purpose.  *See Chao v. Occupational*

*Safety & Health Review Comm'n*, 540 F.3d 519, 527 (6th Cir. 2008) (upholding OSHA

interpretation of Act and citing Secretary's policy expertise as implementing agency).

---

subject to regulations of the Secretary, defining the purpose of such accompaniment as aid of the inspection, and extending mandatory consultation rights to a reasonable number of employees where there is no 'authorized' represen[t]ative of employees. In the absence of such provisions the Secretary might well find himself required to resolve union organizing issues which have no relationship to this legislation."

[4]     "In connection with inspections, the Secretary should have the full benefit of the views of affected employees. . . . At the same time, the bill's procedures should provide for minimum disruptions to the inspector in the performance of his work and no undue interference with the conduct of the employer's business."

-28-

Moreover, unlike 29 C.F.R. § 1903.8(c), which explicitly provides that "[t]he representative(s) authorized by employees *shall be an employee(s) of the employer*," *id.* (emphasis added), and permits a non-employee third party to accompany the Compliance Safety and Health Officer during a physical inspection of the workplace, the Act merely provides that the employee's representative must be authorized by the employee, not that the representative must also be an employee of the employer.[5]

Because the Letter does not exceed OSHA's authority under the Act, NFIB's second claim is dismissed with prejudice for failure to state a claim on which relief can be granted.

\* \* \*

Accordingly, OSHA's motion is granted in part and denied in part.

**SO ORDERED**.

February 3, 2017.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE

---

[5]The Act does say that this particular provision is "Subject to regulations issued by the Secretary." 29 U.S.C. § 657(e). But NFIB does not contend that, because the Letter violates a regulation such as 29 C.F.R. § 1903.8(c), it necessarily violates the Act. Accordingly, the court will not address this question.